Andrew HOFER, Appellant,

v.

Alan K. CAMPBELL, Chairman, U. S. Civil Service Commission, et al.

No. 77–1760.

United States Court of Appeals, District of Columbia Circuit.

Argued May 1, 1978.

Decided July 13, 1978.

Rehearing Denied Aug. 18, 1978.

Appeal from the United States District Court for the District of Columbia (D.C.Civil 75–1633).

Ilona M. Hogan, Forestville, Md. with whom Robert N. Boyer, Forestville, Md. was on the brief, for appellant.

Kenneth M. Raisler, Asst. U. S. Atty., Washington, D. C. with whom Earl J. Silbert, U. S. Atty., John A. Terry, Michael W. Farrell and Tobey W. Kaczensky, Asst. U. S. Attys., Washington, D. C. were on the brief, for appellee.

L. M. Pellerzi and Peter B. Broida, Washington, D. C. were on the brief, for amicus curiae urging that this case be reversed and remanded for further proceedings.

Before TAMM and WILKEY, Circuit Judges, and RONALD N. DAVIES,* United States Senior District Judge for the District of North Dakota.

Opinion for the Court filed by Senior District Judge DAVIES.

Dissenting opinion filed by WILKEY, Circuit Judge.

RONALD N. DAVIES, Senior District Judge:

This is an appeal from a judgment entered by the district court dismissing appellant's complaint for lack of subject matter jurisdiction.

The appellant, Andrew Hofer, an employee of the Social Security Administration, Department of Health, Education and Welfare (Agency), of Hungarian descent, is a naturalized citizen of the United States. On June 21, 1972, appellant filed a formal administrative complaint with his employer pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., alleging discrimination based on national origin. The Agency, following a hearing by a Complaints Examiner, issued its final decision on March 19, 1974, adopting the recommended decision of the Examiner that "Hofer was not discriminated against on the basis of his national origin as alleged."

The letter notifying appellant of the Agency's decision advised him that:

If dissatisfied with this decision, Mr. Hofer may appeal by submitting his request in writing within fifteen (15) calendar days after receipt of this letter to the Board of Appeals and Review, U. S. Civil Service Commission, Washington, D. C. 20415. In the alternative, he may seek judicial relief by filing a civil action in an appropriate U. S. District Court within thirty (30) calendar days after receipt of this letter. Please note: If Mr. Hofer requests an appeal from the Civil Service Commission, his right to file a civil action will be preserved. In that case, he may file the civil action within thirty (30) calendar days after receipt of the Commission's decision; or, if the Commission has not issued its decision, 180 calendar days after the date the Board of Appeals and Review accepted his request for appeal.

Appellant chose to pursue his administrative remedies and appealed to the Board of Appeals and Review (now Appeals Review Board) of the Civil Service Commission. On August 21, 1974, the Board affirmed the final Agency decision. It also concurred with the recommended corrective action of the Complaints Examiner, adopted by the Agency, that "the Deputy Assistant Commissioner, along with members of his staff make every effort to have the complainant placed in a comparable position in another area of the Social Security Administration

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

where he will not come under the influence, supervision or control of any official of the Office of Public Affairs." The Board's decision notified appellant that:

> Civil Service regulations provide that the Board's decision is final and there is no right of administrative appeal. However, if the complainant is not satisfied with the Board's decision in this case, he is authorized by section 717(c) of the Civil Rights Act of 1964, as amended by the Act of March 24, 1972, to file a civil action in an appropriate U. S. District Court within thirty (30) calendar days of his receipt of the Board's decision in this case.

On September 19, 1974, appellant wrote the Appeals Review Board:

> On August 28 I received a copy of the letter you sent on August 21 to Mr. Samuel Hoston of HEW, enclosing the Board's decision in my case.

> In this connection I would like to inform the Board that I have tentatively accepted a position, remaining in SSA's Office of Public Affairs. I accepted this offer because the agency assured me that I will start with a clean slate, assuming some of the functions that have been taken away from me. I accepted this tentatively and with reluctance, because contrary to the Board's decision that the agency place me elsewhere, the agency did not find another job for me but reassigned me to OPA. I was given the assurance that OPA will treat me fairly and equitably, and will let me function in a meaningful way. I accepted this offer in good faith, and presently I do not plan to pursue my complaint in the courts.

> I consider the offer a good cause to postpone my pursuit of judicial remedy in the expectation that OPA will live up to its promise. This action on my part, however, is not to be construed a waiver of my right to pursue my complaint in the courts. In fairness, I would like to see how this works out for me, and will decide within a reasonable time what course to pursue. I will inform the Board my decision then whether to drop the complaint or revive it.

On June 16, 1975, appellant, unsatisfied with the Social Security Administration's compliance with the Board's decision, wrote the Civil Service Commission requesting review of the August 1974 decision. On September 2, 1975, the appellant was informed that his request to reopen and reconsider was denied. Within 30 days appellant filed this action in the district court.

█ Section 717(c) of the Act, 42 U.S.C. § 2000e–16,[1] requires that an aggrieved employee must file a civil action within 30 days after receipt of notice of final administrative action. This limitation is jurisdictional. *Richardson v. Wiley,* 186 U.S.App. D.C. 309, 569 F.2d 140 (1977).

█ When appellant received the Board's August 21, 1974, adverse decision holding that he had not been discriminated against on the basis of national origin, the 30 day jurisdictional period in which to file a civil action commenced. His election to accept that determination and to rely on the Board's mandatory recommendations that the Social Security Administration take corrective action precludes an attempt, over a year later, to pursue judicial remedies. Appellant's contention that the 30 day time limit did not commence until denial of his request of the Civil Service Commission to reopen and reconsider the Board's decision was presented and rejected in *Chickillo v. C. O., Naval Air Engineering Ctr.,* 406 F.Supp. 807 (E.D.Pa.1976), *aff'd,* 547 F.2d 1159 (3d Cir. 1977):

---

1. "Within thirty days of receipt of notice of final action taken by a department, agency, or unit referred to in subsection (a) of this section, or by the Civil Service Commission upon an appeal from a decision or order of such department, agency, or unit on a complaint of discrimination based on race, color, religion, sex or national origin, brought pursuant to subsection (a) of this section . . . an employee . . . if aggrieved by the final disposition of his complaint . . . may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." Title VII, Civil Rights Act of 1964, as amended, § 717(c), 42 U.S.C. § 2000e–16(c).

Third, with respect to plaintiff's request of the Civil Service Commission to reevaluate his case, if this Court were to accept such an argument, it would in effect deny finality to any decision of the Commission. The Fourth Circuit, in *Clark v. Goode,* 499 F.2d 130, 133–34 (4th Cir. 1974), pointed out the absurdity of such a result:

> [A]n aggrieved claimant could revive at any time his claim, however stale, by the simple expedient of filing, as the plaintiff did in this case, a request to reopen. It would not matter that he may already have requested and been denied a reopening. Similarly, it would be of no moment that, after final action by the Commission either on his original claim or on his request to reopen, he had not filed suit within thirty days. That requirement could be frustrated merely by filing a new request to reopen, and when that was denied, suit could be filed. Such a result would thus mock the thirty-day limitation for the institution of the suit, incorporated in the statute, and would do violence to the obvious legislative purpose evident in the statute.

■ We agree. As aggrieved employee cannot provisionally accept the Board's decision, await the outcome of mandated Agency corrective measures, and, if dissatisfied, request the Civil Service Commission to reopen and reconsider the decision and thereby revive his claim.

■ Appellant also challenges the dismissal for lack of subject matter jurisdiction when the complaint contained an alleged colorable constitutional due process denial. In *Richardson v. Wiley, supra,* where the complaint "alleged violations of section 717 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16, the Civil Rights Act of 1866, 42 U.S.C. § 1981, *and the Fifth Amendment* (emphasis added)," this court held, citing *Brown v. GSA,* 425 U.S. 820, 835, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), that "If Richardson has a judicial remedy here, it is under Title VII because it is settled '§ 717 of the Civil

Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment.' "

*Affirmed.*

WILKEY, Circuit Judge, dissenting:

With considerable regret I must point out that the brief decision of my esteemed colleagues not only denies this appellant Hofer the justice that is due him, but in the long run inevitably will have an overall pernicious policy effect. It will compel aggrieved employees to turn down well-intentioned offers of compromise and better treatment in their own agencies which would thus terminate administrative proceedings, and, conversely, will force such employees to file suit in the District Court immediately if they are to preserve their rights. I am sure my colleagues do not intend these two results, but this is exactly what has occurred in this case and will occur in the many others to come.

First, my colleagues have not done Hofer justice because they have barred him from now litigating his claim on the ground that he did not appeal from the final agency action until after a 30-day jurisdictional time limit had expired. The majority opinion focuses on the wrong issue: Hofer has never, not even in this proceeding, appealed from the final agency determination on nondiscrimination; the issues on which Hofer does appeal were never brought to the Commission until over nine months after the decision which the majority opinion holds is the "final agency action" from which the jurisdictional time limit should run.

Secondly, the statutory 30-day jurisdictional limit and the Civil Service Commission's order containing another 30-day limit placed Hofer and any other employee similarly situated in a trap: the regulations require the agency to institute remedial action "promptly" (interpreted as 30 days here), before which the successful litigant employee does not know what the ultimate result will be. During the same 30-day period the jurisdictional time limit for his filing suit in the District Court is running

and will expire at the moment the litigant employee is first aware of whether he has anything to take to the District Court. The failure of the majority opinion to consider this will mean that no well-advised aggrieved employee will ever again be as patient as Hofer was, and we shall have them all in the District Court immediately.

## I.

Let us look not only at the chronology of events, accurately recited by the majority opinion, but at the *issues* raised during this chronology. The "final agency decision" was that "Hofer was not discriminated against on the basis of his national origin as alleged."[1] Hofer took his administrative appeal to the Civil Service Commission and then to the Appeals Review Board, which "on August 21, 1974, . . . affirmed the final agency decision." Hofer has never attempted to appeal from the Appeals Review Board affirmance of "the final agency decision" that "Hofer was not discriminated against on the basis of his national origin as alleged." This was the *only adverse* part of the agency's decision or the Appeals Review Board's affirmance from which Hofer had any reason to appeal. He did not, and does not attempt to do so in the proceedings before this court.

The Appeals Review Board decision of 21 August 1974 contained another important provision. The Board "also concurred with the recommended corrective action of the Complaints Examiner, adopted by the Agency, that 'the . . . Commissioner . . . make every effort to have the complainant placed in a comparable position in another area of the Social Security Administration . . . .' "[2] This action of the agency, favorable to Hofer, was obviously not something from which he would be expected to take an appeal at any time, and he has not done so.

Hofer was now placed in the same position in which every aggrieved employee, who has achieved a partial success with his administrative complaint, has been and will be placed: Hofer had 30 days within which to go to the District Court about that part of the agency decision with which he disagreed, or to accept the part which was favorable to him. Actually, in Hofer's case, he did not get all that the agency decision said was coming to him, because he was not "placed in a comparable position in another area of the Social Security Administration." The agency personnel may have made a good faith effort to place Hofer elsewhere, but they did not succeed, for on 19 September 1974, shortly prior to the expiration of the 30-day limit for District Court litigation, Hofer wrote the Board, "I have tentatively accepted a position, remaining in SSA's Office of Public Affairs. I accepted this offer because the agency assured me that I will start with a clean slate. . . . I accepted . . . with reluctance, because contrary to the Board's decision that the agency place me elsewhere, the agency did not find another job for me but reassigned me to OPA. . . . I consider the offer a good cause to postpone my pursuit of judicial remedy in the expectation that OPA will live up to its promise. This action on my part, however, is not to be construed a waiver of my right to pursue my complaint in the courts."[3] Hofer's right to file in the District Court *challenging the agency's final decision of nondiscrimination* thus expired in September 1974.

Hofer, thus fortified by a directive of the Appeals Review Board of the Civil Service Commission and the assurance of his own agency, thus remained working for the Social Security Administration, Office of Public Affairs, through 1974 until June 1975. Hofer then reluctantly reached the conclusion that the SSA was not carrying out its part of the bargain of September 1974 and that his working conditions in the agency had not been bettered at all by the Board directive of August 1974. He then had two choices: initiate a brand new administrative proceeding, charging that the agency

1. Maj. op. 976; App. 15.

2. Maj. op. 976; App. 13, 17.

3. Maj. op. 977; App. 19.

had not carried out its part of the compromise agreement reached following the Board directive in September 1974, with the attendant delays in creating a new administrative record, etc., or take his complaint of noncompliance with the Appeals Review Board directive and the compromise agreement with the agency directly to the Civil Service Commission.[4]

On 16 June 1975 Hofer wrote the Civil Service Commission requesting a review of the Appeals Board decision of 21 August 1974 under 5 C.F.R. § 713.235 of the Civil Service regulations. In this letter Hofer carefully cited, in accordance with the regulations, three grounds why the Commissioners should reopen and reconsider his case: (1) issues of precedential nature raised; (2) mass of evidence overlooked, new evidence not considered; and (3) noncompliance with the Board's decision—breach of agreement. In this letter Hofer asserted, "In spite of the Board's decision almost ten months ago, SSA never carried out its mandate to put me in a comparable job elsewhere. On the contrary, I have reasons to believe that SSA purposely misled the Board by submitting a false report on my placement . . . . Nor has the agency carried out the other recommendations of the Hearing Examiner as directed by the Board. This is further proof of the continuing discrimination and retaliation the agency has practiced against me. . . . I also accuse the agency of negotiating in bad faith and not carrying out its promise which I had reported . . in my letter of September 19, 1974. (Copy enclosed.) I hereby reserve my rights, as I did in my letter . . ., to pursue judicial remedies in my discrimination complaint, pending the disposition of my case on review by the Commissioners."[5]

In its reply of 2 September 1975, the Board stated that "it has been provided by regulation that the Commissioners may, in their discretion, reopen and reconsider any

previous decision when the party requesting reopening submits written argument or evidence which tends to establish that (a) new and material evidence is available that was not readily available when the previous decision was issued", and reciting the other two criteria relied upon by Hofer in this letter. The Commission ruled adversely to Hofer, stating, "Your request for reopening and reconsideration of your appeal by the Commissioners must be denied. Having received a final decision of the Civil Service Commission on your appeal, you have exhausted your administrative appeal rights within the Commission and your case is considered to be closed."[6]

To me Hofer's position and the issues before this court could not be clearer. The issues raised by Hofer in his letter of 16 June 1975[7] and the Board's reply of 2 September 1975 dealt with whether the Appeals Review Board directive of August 1974 had been faithfully carried out by the agency and whether the agency had carried out its own compromise agreement negotiated with Hofer in September 1974. *Neither of these issues could possibly have been considered by the Board in its August 1974 decision, nor could either issue have been raised in a District Court action 30 days after the Board's decision*, because the agency had an equal 30 days within which to comply with the Board's directive and it was only a few days before the expiration of the limitation period that Hofer negotiated his compromise agreement with the agency.

The issues raised before the Civil Service Commission in June 1975 and decided by it 2 September 1975 were *distinct from the issue of nondiscrimination, the only issue decided adversely to Hofer from which he was required to take an appeal within 30 days of the 21 August 1974 decision*. Hofer cannot be cut off in the District Court by the 30-day period of limitation with respect

---

4. Hofer's counsel asserted at oral argument that at this time Hofer consulted with superiors in the agency and was told he should go back to the Commission. The record, being exclusively documentary, is unable to support this.

5. App. 25.

6. App. 27–28.

7. App. 23–25.

to the issue decided on 21 August 1974, because the issues raised and decided by the Commission on 2 September 1975 are different issues, even though they may grow out of the same original proceeding. Therefore, the *2 September 1975 decision must be the final decision of the CSC on the issues raised then,* because it is the *only* decision the CSC made on the questions of whether the agency had carried out the Appeals Review Board's directive and had carried out its agreement with Hofer.[8]

## II.

Now we come to the more widespread effects of the majority opinion's holding here, whose highly undesirable character has perhaps become obvious by the above discussion.

By defending this case on the basis that Hofer did not file suit within 30 days of the final decision of the Appeals Review Board in August 1974, the Social Security Administration and the Civil Service Commission revealed that they had constructed a very neat trap for the unwary aggrieved employee.[9] Everyone is aware of the jurisdictional time limit of 30 days for the aggrieved employee to go to the District Court [10]—the Board so advised Hofer, and Hofer recognized it. But, when remedial action is directed by the Board, the agency has 30 days within which to implement the ordered corrective action, as was ordered in Hofer's case.[11] If the corrective action directed by the Board is even reasonably satisfactory to the aggrieved employee, his inclination will be to accept it and thus avoid the expense and delay of further litigation. If he ac-

cepts it, he must rely on the good faith of the agency in implementing the corrective action, *and* he also must rely on his ability to go back to the Civil Service Commission if the Board directive is not carried out. Whether the Board directs remedial action or not, if after the final decision the agency offers a compromise of different and hopefully better treatment to the aggrieved employee, as the agency did to Hofer here, the compulsion on the employee to accept the promised future situation instead of incurring federal court litigation expenses is considerable; again, it depends on the good faith of the agency to carry it out and the employee's ultimate right of recourse to the Commission to compel its implementation.

What the majority opinion here does is warn every Government employee that he cannot rely on the good faith promises of his superiors in his own agency, that he cannot rely on the Civil Service Commission to compel compliance with its Appeals Review Board's directives, and that he cannot rely on going to the Civil Service Commission if either the Board directive or negotiated agreement with the agency is not carried out in good faith by the agency. On the contrary, the majority discussion here is a clear warning bell that the aggrieved employee must file suit in the District Court within 30 days after an Appeals Review Board decision, even if substantial and entirely satisfactory corrective action has been directed by the Board, and even if the agency has solemnly promised him specific satisfactory future treatment.

For, otherwise, if the Commission declines to reconsider the employee's situation

8. The 2 September 1975 letter of the Board reinforces the sense of finality: "Having received a final decision of the Civil Service Commission on your appeal, you have exhausted your administrative appeal rights within the Commission and your case is considered to be closed." In other words, after resort to the Commission itself on a request for reconsideration, there was to be no further appeal to the Appeals Review Board. When the issue decided by the Board in 1974 and the issues decided by the Commission itself in September 1975 are compared, it becomes undeniably obvious that the Commission's decision on reconsideration

has to be the *final* decision, because it was the only one which dealt with the two issues Hofer raised from which an appeal to the District Court and now to this court could lie.

9. Hofer did not retain counsel until after the final decision of the Commission in September 1975, relying from time to time on his own judgment plus consultation with "friends" in the agency.

10. 42 U.S.C. § 2000e–16(c).

11. App. 13–14; 5 C.F.R. § 713.234.

a year later, when the agency has both failed to carry out the Appeals Review Board's directives and reneged on its negotiated promises, then action in the District Court will be barred by the claim that the "final decision" was rendered long ago and that the complainant is barred by the 30-day jurisdictional limitation statute. Since, as in Hofer's case, the issues as to compliance with the Board's directives and implementation of its own agreement will not have arisen until after the 30-day jurisdictional period will have expired, it will be an ingenious lawyer who is able to file suit in the District Court within the 30-day jurisdictional period and make allegations which will stand up against a motion by the agency to dismiss, this time on the ground that no present harm has been alleged.

The majority opinion fails to note that it is the Civil Service Commission's regulations themselves which, if interpreted as the Commission argues here, have painted aggrieved employees into a corner from which they can only escape by a leap into the District Court at the earliest opportunity. For purposes of administrative finality, the Civil Service Commission regulations [12] define a decision of the Appeals Review Board as "final" from which an action may be filed in the District Court within 30 days. However, the complainant has the right to request the Commissioners to reopen and reconsider "any previous decision." [13] The Commissioners have such authority to reopen and reconsider decisions that are of a precedential nature involving novel policy considerations, those involving erroneous interpretation of law regulations, and those cases in which new evidence is available. All three of these grounds were cited by Hofer in his letter of 16 June 1975 [14] and by the Commission itself in its reply to Hofer of 2 September 1975.[15]

If reconsideration by the Commissioners is to mean anything at all, reconsideration by the Commission after what the regulations define—for administrative finality purposes permitting an appeal—as the "final" Appeals Review Board decision, then Commission action on petitions to reconsider after the "final" Appeals Review Board decision must also be taken as "final" administrative action from which an appeal to the District Court will lie. This will not give rise to a flood of papers to the Commissioners, as the majority opinion seems to fear, for the regulations authorizing such reconsideration carefully specify the grounds on which such reconsideration can be asked. Hofer had such grounds here, particularly as to the new evidence regarding the agency's noncompliance with the Board's directive and its own agreement. Hofer's was not a *pro forma* motion for reconsideration filed after the Board's only adverse decision on the point of nondiscrimination. Hofer filed ten months later, after new evidence was available justifying, at least in his view, the Commission's reconsideration of his situation. Nor is it likely that any other litigants will fruitlessly flood the Commissioners with requests for reconsideration. If there is something in the Board's decision adverse to the aggrieved employee which he wants to appeal, why should he waste time at the level of the Commissioners when he has a perfect right to go immediately to the District Court, and when the Commissioners' reconsideration is by no means an essential predicate of that right?

In other words, my colleagues' fear of administrative indecision and a flood of worthless requests for reconsideration to the Commissioners is utterly groundless. What the Commission's interpretation of "finality" here does is remove the Commissioners from their proper role of enforcing Title VII of the Civil Rights Act in the federal sector. If employees like Hofer here are to be barred by the 30-day finality provision, when they request reconsideration by the Commission months after the Appeals Review Board decision on the grounds that the directives of that Board

---

**12.** 5 C.F.R. § 713.234.

**13.** 5 C.F.R. § 713.235.

**14.** App. 23–25.

**15.** App. 27–28.

have not been carried out in good faith by the agency, then the Commission and the majority here are directing the supervision and implementation of Board decisions *away* from the Civil Service Commission, where it properly belongs, and right into the District Court within 30 days. If complainants are given the choice of appealing to the Commissioners at the risk of losing their right to a lawsuit, few will choose the former course. It is likewise unrealistic to expect complainants to appeal and file suit at the same time just to preserve the proper role of the Civil Service Commission.

Thus, the acceptance of the Commission's argument here that Appeals Review Board decisions are the only "final action," for the purpose of establishing the time frame of the 30-day limitation period, stampedes the District Court with cases far better left to the Civil Service Commission. At the same time, as is shown clearly by Hofer's unfortunate example, it misleads aggrieved employees who are not warned by the regulations that an unsuccessful appeal to the Commissioners, without the simultaneous institution of litigation, will mean foreclosure from judicial relief at a later date.

After the decision here in Hofer's case, unfortunate laymen without counsel, as Hofer, will continue to make the error of trusting their agency's good faith and an ultimate appeal to the Commission, while aggrieved employees with lawyers will place no reliance on agency good faith or on the Commissioner's wisdom, but will leap immediately into the District Court within 30 days. The results of this case thus are that Hofer is barred from justice, the ill-advised in the future will be barred from justice, and the better advised will increase litigation in the federal courts, when a reasonable rule would permit the matters to be handled within the administrative sector.

### III.

The decision is unsound in Hofer's individual case because both the District Court and the majority opinion here focus on the wrong issues as to which administrative decision finality is to be accorded for jurisdictional purposes. The August 1974 decision of the Board decided adversely to Hofer only the nondiscrimination issue from which no appeal was ever attempted, and that decision never purported to decide two issues which had not yet arisen. The Commission's decision of September 1975 *must be final* on the two issues raised by Hofer, because it is the *only* decision on these issues, and in that decision the Commission emphatically told Hofer that "your case is considered to be closed." [16] Hofer's case should be remanded to the District Court, whose jurisdiction is not barred by the 30-day proviso.

The decision is unsound as a matter of administrative law *policy.* Oversight of Appeals Review Board directives to other federal administrative agencies in these Title VII cases belongs in the first instance to the Civil Service Commission, not the federal courts. Oversight of compromise agreements made between aggrieved employees and their agencies likewise belongs to the CSC, not the courts. The majority opinion here will have a diametrically opposite effect. Employees are told they must go to federal court within 30 days of a Board decision, even if they have received enough satisfaction from the Board's decision or a compromise agreement with their agency so that they do not then desire to appeal. For, if the employee waits to see if his agency performs in good faith, he will have no judicial appeal from the *Commission's* denial of a later request for reconsideration.

The statute says appeal must be made within 30 days of a "final" agency decision. No one quarrels with this. The District Court and this court now say that "final" means the original decision of the Board, and cannot be the later decision of the Commission. This has no logic, for, as illustrated in Hofer's case, the issues brought before the Commission were, and are likely to be in all cases involving implementation of the Board's decision or an employee-agency agreement, quite different from is-

---

16. App. 28.

**984**

sues originally decided by the Board. When the Commission not only denies the request for reconsideration, but also states "your case is . . . closed," thus precluding further resort to the Appeals Review Board which by regulation is deemed "final" for appeal purposes, this should be final enough for judicial review under the Administrative Procedure Act.[17]

I respectfully dissent.

17. For the Civil Service Commission to clarify by its own regulation that a decision of its own Appeals Review Board is "final" for purposes of judicial review is unobjectionable, and, indeed, a contribution to the clarity of the administrative and judicial process. However, when the Commission itself proceeds to deal with questions on petitions for reconsideration which arose *after* the decision of the Board, and thus could not have been dealt with by the Board, and then the Commission itself in its order dealing with the questions on reconsideration states "your case is . . . closed," then the Commission *cannot* claim that its regulation defining action of its own Board as "final" precludes the Commission's own, and only, action on the newly raised issues from also being "final" for judicial review purposes. To give this interpretation to the regulation would make it invalid as contrary to statute. Under the Administrative Procedure Act, 5 U.S.C. § 704, all agency action (with certain statutory exceptions) which is in truth "final" and dispositive of claims made to the agency, is made subject to judicial review. Neither the Commission nor any other agency can cut out from judicial review certain action which it takes, and which in practical effect *is* final (here the *only* action on these issues), by a regulation defining other categories of action as final also.